```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH LITTLE and ALBERT CAFFERELLI,

                                  Plaintiffs,
       v.                                               12-CV-6386T

LANDSMAN DEVELOPMENT CORPORATION and               ORDER
PHILLIPS VILLAGE PRESERVATION L.P.,

                                  Defendants.
_____
```

INTRODUCTION

Plaintiffs Kenneth Little and Albert Cafferelli, tenants of the Phillips Village apartment complex owned and operated by defendants Landsman Development Corporation and Phillips Village Preservation L.P., brought this action claiming that the defendants violated their rights under the Fair Housing Act and the New York State Fire Prevention and Building Code. Specifically, plaintiffs, who allege that they are disabled, claimed that the defendants improperly removed wheelchair ramps used by the plaintiffs to access their respective apartments, thus depriving plaintiffs of reasonable and safe access to their apartments.

By motion dated August 2, 2012, the plaintiffs moved for a preliminary injunction seeking an Order from this Court directing defendants to reinstall the ramps during the pendency of this litigation. By Decision and Order dated September 5, 2012, I denied plaintiffs' motion. Thereafter, the parties engaged in settlement negotiations, and after successful negotiations, each plaintiff entered into a settlement agreement ("the Agreements")

with the defendants pursuant to which, <u>inter</u> <u>alia</u>, the defendants agreed to "construct an exterior ramp from the enclosed rear patio adjacent to the Apartment Unit to the grassy unimproved area behind the building ("the Ramp"), subject to the granting of consent and approval required by any municipal authorities."  Confidential Settlement Agreement between Albert Cafferelli and Landsman Development Corporation et. al., at ¶ 1; Confidential Settlement Agreement between Kenneth Little and Landsman Development Corporation et. al., at ¶ 1.

Plaintiffs contend that the defendants have failed to comply with the Agreements because rather than construct ramps as defined under the New York State Building Code, the defendants simply created dirt and sod ramps, with no rails and no foundation, extending from the ground to the edge of their respective patios. Plaintiffs claim that these earthen inclines are not functional as ramps, and do not satisfy the obligation to install ramps as contemplated and agreed to by the parties.  Plaintiffs now move to enforce the Agreements by requiring defendants to construct ramps as defined under the New York State Building Code for their respective units.  Defendants oppose the plaintiff's motion arguing that the ramps they built satisfy the ramps promised in the Agreements.

For the reasons set forth below, I grant plaintiffs' motion to enforce the settlement agreement and Order defendant to construct

ramps that are in compliance with the New York State Building Code for each plaintiff's unit.

## BACKGROUND

The following facts were largely set forth in my previous Order denying plaintiffs motion for a preliminary injunction. Plaintiffs Kenneth Little and Albert Cafferelli are residents of the Phillips Village Apartment Community, a complex consisting of 33 apartment buildings and 500 residential units. According to the Complaint, Little uses a wheelchair for mobility, and Cafferelli has limited ambulatory mobility due to various medical conditions. Little rents a one-bedroom first floor apartment, and Cafferelli rents a two-bedroom, first floor unit. Both units are wheel-chair accessible through the primary, front-door access way.

Prior to renovations of their respective apartments, each of the units included a raised patio area at the back of the unit which was accessed from inside by a sliding glass door. With respect to the plaintiffs' apartments, (but not all of the apartments in the complex), each rear patio area included a ramp which led to a large, unimproved grassy area. Aside from being mowed, the grassy area was not otherwise maintained or considered or intended by the defendants to be a common area, and is not maintained in the winter-time.

In late, 2011, Landsman announced to the residents of Phillips Village that it was undertaking a significant renovation project to be completed in 2012. On May 18, 2012, and June 14, 2012,

respectively, Little and Cafferelli were notified that the renovations to their respective patios would begin shortly thereafter. Pursuant to the renovation plans, the rear patio of each plaintiff's unit was to be enclosed, and the ramps removed. Indeed all first-floor units were to have enclosed patios, with no access ramps or stairs from the grassy area to the patio. According to the plaintiffs, Little's ramp was removed on May, 18, 2012, and Cafferelli's ramp was removed on June 18, 2012.

After this Court denied plaintiffs' motion for a preliminary injunction, the parties engaged in settlement negotiations, and each plaintiff reached an agreement with the defendants whereby defendants agreed to construct exterior ramps from their respective patios to the lawn below. According to the plaintiffs, the ramps constructed by the defendants do not comply with the ramps promised in the settlement agreements, and accordingly, they now seek an Order from the court directing defendants to install ramps in accordance with the New York State Building Code.

<u>DISCUSSION</u>

The plaintiffs claim that the defendants have breeched their respective settlement agreements by not constructing and installing ramps that meet the standards of the New York State Building Code. Specifically, plaintiffs contend that the earthen build-up covered by sod that the defendants installed as "ramps" are not ramps as defined by the New York State Building Code, and are not the type of ramps contemplated by the parties in the Agreements. Defendants contend that the terms "ramps" was undefined in the agreements, and

should be generically defined as an "incline." Defendants contend that because the installed ramps satisfy a generic definition of the term "ramp," the defendants have met their obligations under the Agreements.

In determining the meaning of the terms used in a contract, the court must construe the terms "so as to give effect to the intention of the parties as expressed in the unequivocal language employed." Breed v. Ins. Co. of North America, 46 N.Y.2d 351, 355,(1978); Morgan Stanley Group, Inc. V. New Eng. Ins. Co., 225 F.3d 270, 275 (2nd Circ. 2000). Provided that the contract term at issue is unambiguous, interpretation of the contract language is a question of law for the court. Parks Real Estate Purchasing Group v. St. Paul Fire and Marine, 472 F.3d 33, 42  (2nd Cir., 2006). If the language of the contract is unambiguous, "its meaning must be discerned with the 'four corners' of the agreement." Suarez v. Ward, 896 F.2d 28, 30-31 (2d Cir. 2005). "Alternatively, '[w]here the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another,' then the interpretation of the contract becomes a question of fact for the jury and extrinsic evidence of the parties' intent properly is admissible." Bourne v. Walt Disney Co., 68 F.3d 621, 629 (2d Cir. 1995)(quoting Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir.1992).

In the instant case, I find that the term "ramp" as used in the settlement agreements is unambiguous, and refers to a ramp as defined under the New York State Building Code.  While a court

cannot refer to extrinsic evidence to define an unambiguous contract term, the court must "examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby." Kass v. Kass, 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 696 N.E.2d 174 (1998); Axiom Capital Mgmt., Inc. v. Oracle Min. Corp., 12 CIV. 8967, 2014 WL 1226479 at *13 (S.D.N.Y. Mar. 25, 2014).

In the instant case, the settlement agreements reached by the parties were negotiated for the purpose of resolving plaintiffs' claims that the defendants were in violation of the New York State Building Code by removing their existing wooden ramps. Accordingly, the context of the Agreements was to settle disputes regarding compliance with the New York State Building Code. Under such circumstances, the term "ramp," is not at all ambiguous, and indeed refers to a "ramp" as understood and defined by the New York State Building Code. Adopting a generic definition of the term "ramp" to simply mean any "incline" would divorce the term from the context of the dispute the agreements seek to settle. The plaintiffs claimed that the defendants removal of the ramps violated the New York State Building Code, and the parties agreed that installation of ramps would settle that claim. Under these circumstances, it is clear "ramps" referred to architectural ramps as defined under the New York State Building Code.

Additionally, defendants provide no compelling reason to adopt their proposed generic definition of the term "ramp," and indeed provide a factual basis for rejecting such an interpretation. It is well-settled that a "contract must be construed according to the custom and use prevailing in a particular trade." Seven Star Shoe Co., Inc. v. Strictly Goodies, Inc., 657 F.Supp. 917, 921 (S.D.N.Y.1987); Axiom Capital Mgmt., 2014 WL 1226479 at *13. In the instant case, the term "ramp," when used in the context of providing ambulatory or wheelchair access for individuals, has a common meaning as set forth in great detail in Section 1010 of the New York State Building Code. The defined term includes specifications for the width, length, and slope of such ramp, and also requirements for the use of non-slip materials in the construction of the ramp and the inclusion of handrails in certain cases. Because the term "ramp" has a commonly understood meaning within the construction and building trade, there is no reason to substitute a generic, dictionary definition for the term.

This conclusion is supported by the defendants own evidence. Defendants have submitted a letter from the Building Inspector for the Town of Webster, New York (where the apartments are located) who, after inspecting the alterations made by the defendants, stated that:

> these structures are not "ramps" within the meaning of the Building Code of New York State. Though the structures may be referred to descriptively as ramps, they are not "ramps" as defined in the New York State Building Code. From my understanding they are

>   merely a change in elevation and/or a landscaping feature.

November 26, 2013 Letter from Willard H. Barham to James Goff, attached as Exhibit "G" to the December 5, 2013 Affidavit of James Goff (Docket item no. 25). This opinion confirms that the term "ramp" has an established meaning within the building trade. Because the term "ramp" is a commonly understood and used term in the building trade, I find that the Agreements incorporated this established meaning, and not a generic construction of the term. Accordingly, I find that the Agreements at issue require defendants to install ramps that are in compliance with the New York State Building Code. Because the current sod-covered inclines do not constitute ramps as required under the Agreements, I grant plaintiff's motion to enforce the settlement agreements.

## CONCLUSION

For the reasons set forth above, I grant plaintiff's motion to enforce the settlement agreements, and ORDER defendants to install compliant ramps at their expense within 60 days of the date of this Order.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         June 5, 2014